**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Catherine Marie Styma, | No. CV-20-02363-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Catherine Marie Styma's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits. The appeal is fully briefed, (Doc. 26, Doc. 29, Doc. 32), and the Court now rules.

**I.    BACKGROUND**

   **A. Factual Overview**

Plaintiff was 32 years old at the alleged disability onset date (AR 28) with an AA degree and has a history of work of semi-skilled or skilled jobs. (AR 28). Plaintiff filed her social security disability claim on April 24, 2017, alleging disabilities beginning on December 1, 2015, including irritable bowel syndrome with diarrhea, major depressive disorder with mixed features, adult attention deficit disorder, insomnia or circadian rhythm sleep-wake disorder, nerve pain, hand pain, urinary urgency/incontinence, generalized anxiety disorder, panic attacks, irritability, and hereditary bipolar disorder. (AR 300). An ALJ denied Plaintiff's claim on March 20, 2020. (AR 30). The SSA Appeals Counsel

denied a request for review of the decision and adopted the ALJ's decision as the agency's final decision. (AR 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1) (E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

**C. The ALJ's Application of the Factors**

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2015, the alleged onset date. (AR 19). At the second step, the ALJ concluded Plaintiff had severe impairments of chronic pain syndrome, peripheral neuropathy, general anxiety disorder and major depressive disorder. (AR 19–20).

At the third step, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (AR 19–20). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b). (AR 22).

At the fourth step, the ALJ determined that Plaintiff could not perform her past relevant work. (AR 28). However, at step five, the ALJ concluded that Plaintiff could perform other work in the national economy. (AR 28–29). Therefore, the ALJ determined that Plaintiff was not disabled.

**II.   LEGAL STANDARD**

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

(quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises two potential errors in the ALJ's analysis: 1) the ALJ committed materially harmful error by rejecting the assessments from doctors, and 2) the ALJ committed materially harmful error by rejecting Plaintiff's subjective symptom testimony. (Doc. 26 at 1–2). The Court addresses each in turn.

### A. Medical Testimony

Plaintiff first argues the ALJ erred by rejecting the assessments from her treating psychiatrist Dr. Ewa Szafraniec and the agency's consultative examiner Dr. David Jarmon. (Doc. 26 at 9). Plaintiff specifically claims that the ALJ erred in relying on the opinions of the state agency reviewers while not providing specific and legitimate reasons supported by substantial evidence for rejecting the assessments of Dr. Szafraniec and Dr. Jarmon. (Doc. 26 at 12–13).

Plaintiff filed her application on April 24, 2017. For disability benefits claims filed after March 27, 2017, including the application in the present case, new SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ should determine the persuasiveness of each medical opinion using the following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other relevant factors. *Id.* The SSA has explained that supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how he considered both factors. *Id.*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5853 (Jan. 18, 2017) (codified at 20 C.F.R. § 404).

Although Plaintiff argued for benefits under the old "specific and legitimate reasons" standard, she has filed a filed a supplemental brief noting that the Ninth Circuit has dispatched with the "specific and legitimate reasons" standard in favor of a supportability and consistency standard. (Doc. 33 (citing *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022)). She still contends that the ALJ did not explain the supportability and consistency of the medical sources. (Doc. 33 at 6).

### 1. Dr. Jarmon

In September 2017, Dr. Jarmon completed a psychological consultative evaluation of the Plaintiff. (AR 592–98). Dr. Jarmon noted that Plaintiff's work history ended due to "the problem of not being able to complete work tasks because of her obsessive and compulsive tendencies." (AR 594). During the examination, Dr. Jarmon observed Plaintiff's difficulty in completing tasks, diagnosing her with obsessive-compulsive disorder, major depressive disorder, ADHD, and generalized anxiety disorder. (AR 595).

The ALJ addressed Dr. Jarmon's opinion as follows:
> David Jarmon, Ph.D., a consultative examiner, conducted a one-time psychological evaluation of the claimant in September 2017 (6F). In so doing, he opined the claimant is capable of carrying out simple instructions (6F/6). She "can become rather irritable with people" (Id.). Changes in the work setting, "especially if they were not under her control, would be very difficult for her to manage" (Id.). Dr. Jarmon's opinion is persuasive and supported by his mental status examination of the claimant, where the claimant demonstrated an anxious affect and appeared "rather tensed and perfectionistic" (6F/4). She took "between ten and fifteen minutes" to copy a design "to her satisfaction" (Id.). However, findings were otherwise largely within normal limits, showing normal cognition (Id.). His opinion is also

>generally consistent with the claimant's reported functioning indicating she does not have a greater restriction in mental functioning. For example, she reports going outside once or twice a week, being able to go out alone, and being able to drive a car (4E/4). She reports being able to pay bills, handle a savings account, count change, and use a checkbook (4E/5). Moreover, mental status examinations also repeatedly demonstrate unremarkable findings, such as a logical thought process, normal thought content, normal cognition, a full affect, and normal insight and judgment (15F/16/42/67, 17F/42/67, 23F/1/5/9/13/15, and 24F/10).

(AR 26).

The ALJ determined that Dr. Jarmon's opinion evidence was persuasive because it as supported by his mental status examination and consistent with Plaintiff's activities of daily living. (AR 26). Plaintiff argues, however, that the ALJ erred because Dr. Jarmon's testimony leads to a conclusion contrary to the one the ALJ reached: "The ALJ's purported reliance on Dr. Jarmon's conclusions should in fact result in remand for the agency to enter a finding of disability without further proceedings." (Doc. 26 at 17). She argues that, when read as a whole, Dr. Jarmon's report describes a person "incapable of performing any sustained work at a reasonable pace." (Doc. 26 at 14).

In considering Dr. Jarmon's opinion, the ALJ referred to Plaintiff's cognitive exams into cognition, insight, and judgment, which yielded largely unremarkable results. (AR 26). Though Plaintiff contends that the ALJ failed to consider Dr. Jarmon's report on limitations from depression and anxiety, the ALJ noted several times in her opinion that Plaintiff struggled with tasks and took ten to fifteen minutes to complete a simple task. (AR 27). The ALJ stated that such findings "supported some restriction in mental functioning" and Plaintiff had "more than a mild restriction" in concentrating because of her anxiety and depression. (AR 27). Accordingly, the ALJ said that Plaintiff should be accommodated "by limiting her to . . . simple work" with "no public contact" and "no more than occasional superficial contact with co-workers." (AR 25).

Yet the ALJ determined that the limitations were not more severe because of Plaintiff's activities of daily living. Plaintiff reported "going outside once or twice a week" and "being able to pay bills." (AR 26). The Court also does not read the ALJ's reference

to the normal cognitive findings as "cancel[ing] out" the negative findings. (Doc. 26 at 14). Rather, the ALJ used those examinations to find that Plaintiff could perform "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements involving only simple work related [sic] decisions with few if any workplace changes." (AR 25).

The ALJ thus considered the supportability and consistency of Dr. Jarmon's opinion. Although Plaintiff identifies various reasons why a different factfinder could conclude that Dr. Jarmon's opinion supports a finding of greater limitations, the ALJ's findings were rational. "[W]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

2.  Dr. Szafraniec

In March 2018, Dr. Szafraniec completed a mental impairment report (AR 685–90). Dr. Szafraniec opined Plaintiff was "greatly impaired" in the ability to carry out very short and simple instructions. (AR 687). And that she was "extremely impaired" in her abilities to maintain attention and concentration for extended periods. (AR 688).

The ALJ reviewed the report and said:
Her opinion is not persuasive. Although she cites a number of abnormal mental status findings in support, she appears to rely substantially on the claimant's self-reported functioning, which is inconsistent with the overall record. For example, mental status examinations also repeatedly demonstrate unremarkable findings, such as a logical thought process, normal thought content, normal cognition, a full affect, and normal insight and judgment (15F/16/42/67, 17F/42/67, 23F/1/5/9/13/15, and 24F/10). She scored 30/30 on a consultative mini mental status examination (6F/4). Additionally, the claimant was able to repeat three words after the examiner and recall all three after a delay (Id.) and was able to spell "world" backwards (Id.).

(AR 27).

Plaintiff contends that the ALJ "relied upon mental status findings" that were "irrelevant" to Plaintiff's disabling impairments. (Doc. 26 at 17–18). Plaintiff also claims that the ALJ's reliance on mental status examinations were "also irrelevant" to the question of disability. (Doc. 26 at 18). Finally, Plaintiff says that ALJ's dismissal of Dr. Szafraniec's

opinion based on Plaintiff's "self-reported functioning" was erroneous. (Doc. 26 at 18).

That Dr. Szafraniec mostly relied upon Plaintiff's subjective report is not supported by substantial evidence. Dr. Szafraniec's opinion is supported by her own personal observations. (AR 686). While it is evident Dr. Szafraniec did rely upon Plaintiff's report to some extent, it is not evident she relied upon Plaintiff's reports over her own observations and clinical impressions. *E.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

But the ALJ also noted that the medical evidence did not support the severity of Dr. Szafraniec's opined limitations. Specifically, the ALJ found that Plaintiff's mental status examinations returned normal findings. (AR 27). Though Plaintiff argues that the findings are "irrelevant to Styma's disabling impairments," (Doc. 26 at 18), the ALJ accounted for Plaintiff's social anxiety and depression in determining Plaintiff's limitations. (AR 25). Thus, the ALJ properly considered Plaintiff's mental impairments.

In addition, the ALJ looked at treatment notes that said that Plaintiff's medication helped to live her daily life. (AR 26). The ALJ also considered Plaintiff's activities of daily living to find that Plaintiff did not need even greater restrictions than what the ALJ imposed. (AR 26). Based on the mental status findings and other conflicting evidence, the ALJ decided to give little weight to Dr. Szafraniec's opinion. The ALJ did not err in doing so. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are ... unsupported by the record as a whole ... or by objective medical findings).

Conversely, the ALJ gave great weight to the opinions of Rosalia Pereyra, Psy.D., and Joshua Schwartz, Ph.D., state medical consultants, finding that their opinions were consistent with the medical evidence of record. (AR 26–27). The ALJ found the opinions "persuasive" because they were "largely supported by their citations to the record including the claimant reports of compulsive behaviors and history of a depressed mood." (AR 27).

These are appropriate criteria for the ALJ to consider. *Thomas*, 278 F.3d at 957 (("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

**B. Plaintiff's Symptom Testimony**

Plaintiff also argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony. (Doc. 26 at 19).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

At the first step, the ALJ determined that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms." (AR 24). At the second step, however, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (AR 24).

Plaintiff argues that the ALJ "relied on a requirement that does not exist" to find that the severity of Plaintiff's symptoms could be "rejected based on the ALJ's belief." (Doc. 26 at 21). Plaintiff says that ALJ's analysis based on belief that the "symptoms are not entirely consistent with the medical evidence" is a "fundamental legal error" that

requires reversal. (Doc. 26 at 21). The government claims that the "ALJ made sufficiently specific findings" to satisfy the clear and convincing standard. (Doc. 29 at 19).

The Court does not read the ALJ's "not entirely consistent" language as requiring the Plaintiff to provide medical evidence of the severity of those symptoms. Rather, the ALJ's statement merely notes that the record contains conflicting evidence as to the severity of Plaintiff's symptoms. And although Plaintiff is not required to provide medical evidence of the severity of her symptoms, *see Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (explaining "an adjudicator may not reject a Plaintiff's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"), the ALJ may consider many factors in weighing a Plaintiff's credibility, including considering the objective medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Specifically, the ALJ considered the evaluations of the state agency medical consultants, the clinical findings, the treating source opinions, and Plaintiff's reported functional abilities. (AR 23–28). The ALJ determined that the state agency medical consultants' evaluations were "persuasive," largely supported by the citations to the record. (AR 27). Likewise, the ALJ found Dr. Jarmon's opinion on Plaintiff's mental limitations to be persuasive and inconsistent with the limitations alleged by the Plaintiff. (AR 26). Finally, the ALJ considered the Plaintiff's mental status examination results and Plaintiff's reported functional activities, findings that the ALJ found to contradict Plaintiff's testimony. (AR 20–21).

The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. Accordingly, the ALJ did not commit legal error by discounting Plaintiff's testimony.

**IV.   REMEDY**

Plaintiff asks the Court to credit certain evidence as true and direct a finding of disability. Here, the Court finds that the ALJ's decision is supported by substantial evidence and is free from legal error. The Court thus declines to remand this matter.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 12th day of July, 2022.

*James A. Teilborg*
Senior United States District Judge